UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH SILVA, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:22cv29 (MPS) |
| : | |
| ROBLEOO, PROPERTY OFFICER, : | |
| et al., : | |
|     Defendants. : | |

**ORDER ON MOTION TO REOPEN AND INITIAL REVIEW ORDER**

The *pro se* plaintiff, Joseph Silva, is a sentenced inmate housed at Cheshire Correctional Institution ("Cheshire") of the Connecticut Department of Correction ("DOC").[1] He filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging Fourteenth and Eighth Amendment violation based on loss of his property at MacDougall Correctional Institution ("MacDougall"). Compl, ECF No. 1. On initial review, the Court dismissed Silva's complaint for failure to allege any plausible claims but afforded him the opportunity to file an amended complaint. Initial Review Order ("IRO"), ECF No. 11.

Thereafter, Silva filed a motion to reopen which included a proposed amended complaint. Mot. to Reopen, ECF No. 12. On September 30, 2022, the Court denied his motion to reopen because his proposed amended complaint failed to state any plausible claims under 42 U.S.C. § 1983 based on his property loss. Order, ECF No. 15. The Court noted the possibility that Silva could "state a claim by pleading more factual detail about the alleged atypical confinement or the

---

[1] The Connecticut DOC reflects that Silva was sentenced on January 17, 2019 to a term of more than 999 years of incarceration and is now housed at Cheshire. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=414978; *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record.").

alleged denial of mental health services" and so "afford[ed] Silva one more opportunity to amend his complaint" with a motion to reopen the case. *Id.* Silva has now filed a motion to reopen (ECF No. 16) with an attached amended complaint asserting violation of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101), the Rehabilitation Act ("RA") (29 U.S.C. § 701), and Eighth Amendment. Am. Compl., ECF No. 16-1. In his proposed amended complaint, he sues Captain Walsh in her individual and official capacities and Kimble-Goodman and Dr. Pieri in their individual capacities only. *Id.* at ¶¶ 14-16.

To determine whether this matter should be reopened, the court must review whether Silva's most recent proposed amended complaint alleges any plausible claims that should proceed to service on Defendants. *See* 28 U.S.C. § 1915A.

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     ALLEGATIONS

For purposes of initial review, the Court refers to the proposed amended complaint as the amended complaint and considers all of the allegations in the amended complaint to be true. *See* Am. Compl., ECF No. 16-1. Silva's amended complaint has named as defendants the Connecticut Department of Correction, Captain Walsh, and mental health professionals, Kimble-Goodman and Dr. Pieri.[2] *Id.*

Silva has a long history of having special needs, was admitted to the Institute of Living of the Hartford Hospital Mental Health Network, and currently suffers from depression and anxiety as well as other medical issues. *Id.* at ¶¶ 3-4. He also has a learning disability. *Id.* at ¶ 31. He has spent most of his life seeking help for his mental health issues that require attention. *Id.* at ¶ 4. Silva has submitted his school psychological evaluations from 2006 through 2012. Exhibits at 1-23, ECF No. 16-2. He has been sentenced to 999 years of incarceration and was formerly housed under special management at Northern Correctional Institution ("Northern"), a supermax facility. Am. Compl. at ¶ 5.

Since 2021, Silva has repeatedly asked for help with his mental health to accommodate his disability under the ADA and RA. *Id.* at ¶ 8. On May 20, 2021, Silva was transferred from

---

[2] Silva refers to Defendant Kimble-Goodman as a doctor, but his attached exhibits reflect that Kimble-Goodman is an Advanced Practice Registered Nurse ("APRN"). Exhibits at 32, ECF No. 16-2.

Northern to MacDougall-Walker Correctional Institution ("MacDougall"). *Id.* at ¶ 6. Silva alleges that his disability rights were violated at the orientation process, at which time Silva should have been provided—under DOC Administrative Directive 10.19(7)(b)—with notice of his disability rights and asked if he required a reasonable accommodation. *Id.* at ¶ 22.

Silva was placed as a special circumstances inmate due to his mental health issues. *Id.* at ¶ 23. DOC knew or should have known about Silva's mental health issues and should have had him seen by Captain Walsh, the MacDougall Unit ADA Coordinator. *Id.* at ¶ 24.

In an inmate request dated October 25, 2021, Silva requested medication for his anxiety, depression, and impulse disorder that he claimed was being denied. *Id.* at ¶ 25. He received a response dated November 3, 2021 from Dr. Pieri stating: "I see you were evaluated on 10/15/21 and 9/24/2021 by your prescriber and it was her opinion that you did not require additional medication. The supervisor for all of the prescribers is Dr. Burns in Central Office." Exhibits at 24, ECF No. 16-2.

On November 14, 2021, Silva sent another inmate request form to Dr. Pieri about his mental health medication. Am. Compl. at ¶ 26. He stated that he requested APRN Kimble Goodman to put him on another mental health medication for his "Disorder and Stress and bipolar" but she refused to help him with his "stress and anxiety" and did not "want to help [him] in not eating well or talking to anyone from mental health d[ue] to the stress that they [were] causing [him]." Exhibits at 25, ECF No. 16-2. In a response dated November 19, 2021, Dr. Silva stated: "I am not Kimble Goodman's supervisor. Her supervisor is Dr. Burns in central office. I recommend writing to Ms. Kimble Goodman with your question and concerns. If you are in a crisis please reach out to mental health." *Id.*

Silva filed a health care grievance dated December 18, 2021, complaining about Kimble Goodman's failure to help him with his mental health and requesting to be placed back on his medication. *Id.* at 31. Kimble Goodman responded on January 21, 2022, noting that Silva's medication had been discontinued at his request, that a follow up appointment was scheduled, and that he "will be seen for evaluation." *Id.* at 32.

Silva asserts that Defendants have denied him mental health treatment and that any mental health treatment provided was significantly delayed. Am. Compl. at ¶ 9.

### III. DISCUSSION

Silva asserts that his disability rights under the ADA and RA were violated because DOC failed to provide him with reasonable mental health accommodation to enable him to participate in, or benefit from, DOC's mental health services. Am. Compl. at ¶¶ 29-34. Silva claims further that Captain Walsh, APRN Kimble Goodman, and Dr. Pieri acted with Eighth Amendment deliberate indifference to his mental health needs. *Id.* at ¶¶ 49-66.

**A.    Disability Discrimination**

Silva seeks damages from DOC and an injunctive order for DOC and Captain Walsh to provide him with mental health accommodations under the ADA and RA. *Id.* at ¶¶ 35-48.

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84–85 (2d Cir.), corrected, 511 F.3d 238 (2d Cir. 2004). Title II applies to any state or local government or instrumentality of a state or local government. 42 U.S.C. § 12131(1). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or activity. *Id.*

The Second Circuit has noted that "the standards under both statutes are generally the same[.]" *Wright N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Where, as here, any subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'" *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

In order to prevail on a claim under either Title II of the ADA or § 504 of the RA, Silva "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72.

Neither the ADA nor the RA, however, applies to claims regarding the adequacy or substance of medical services provided by correctional departments or provides a remedy for medical malpractice. *See Maccharulo v. New York State Dep't of Correctional Servs.*, No. 08 Civ. 301 (LTS), 2010 WL 2899751, at *2-3 (S.D.N.Y. July 21, 2010); *Atkins v. Cty. of Orange*, 251 F. Supp. 3d 1225, 1232 (S.D.N.Y. 2003). Courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010). Such claims concerning inadequate medical treatment are considered under the Eighth Amendment for sentenced inmates or the Fourteenth

Amendment for pretrial detainees. *See Elbert*, 751 F. Supp. 2d at 595.

For the first element of an ADA or RA claim, Silva must show that he is a "qualified individual" with a disability who has a physical or mental impairment that "substantially limits one or more of that person's major life activities[,]" including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (1)(A) & (2)(A); 29 U.S.C.A. § 705(20)(B).

Silva indicates that his mental health issues limit his ability to sleep and "comprehend." Am. Compl. at ¶¶ 27, 31. For purposes of this initial review, the Court assumes that Silva is a "qualified individual."

As to the second element, a state prison such as the Connecticut DOC "fall[s] squarely within the statutory definition of 'public entity' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)).

With respect to the third element, there are "three available theories[ ]" of discrimination that can be used to establish the third prong of an ADA and Rehabilitation Act claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Here, Silva specifies that he is claiming failure to afford him reasonable mental health accommodations. Am. Compl. at ¶¶ 33-34, 44, 48. In addition, he states that he has been denied the opportunity to participate in or benefit from DOC's mental health services. *Id.* at ¶ 33.

In evaluating an accommodation claim, the Court asks "whether a plaintiff with

disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled." *Wright*, 831 F.3d at 72 (citation and quotation marks omitted). "A plaintiff need not demonstrate that [he] is entirely precluded from accessing a benefit; rather, difficulty in accessing a benefit is sufficient to sustain a reasonable accommodation claim." *Scalercio-Isenberg v. Port Auth. of N.Y. & N.J.*, 487 F. Supp. 3d 190, 201 (S.D.N.Y. 2020).

Here, Silva's amended complaint fails to suggest that he was denied access to, or had difficulty in accessing, participation in DOC's mental health services because of his mental health disabilities. In fact, his exhibits indicate that he has been provided with mental health treatment while at MacDougall (including treatment from APRN Kimble-Goodman), and that Dr. Pieri responded to his inmate requests about his need for medication. *See* Exhibits at 24-25, 32, 42, ECF No. 16-2. Silva's dissatisfaction with the mental health care provided does not suffice to support his claim that he has been deprived of a reasonable mental health accommodation or that he has been denied an opportunity to participate in DOC's mental health services in violation of the ADA or RA. *See Lincoln CERCPAC v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988) ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided.").

In sum, Silva's amended complaint fails to allege any plausible violation of his rights under the ADA or RA. 28 U.S.C. § 1915A.

**B.     Eighth Amendment**

Silva claims that Captain Walsh, APRN Kimble Goodman, and Dr. Pieri acted with deliberate indifference to his mental health needs.

The Eighth Amendment prohibits deliberate indifference to an inmate's serious mental health needs. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (The Eighth Amendment "forbids" not only "deliberate indifference to serious medical needs of prisoners," but also deliberate indifference to serious "mental health care" needs.) (internal quotation marks and citation omitted). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A deliberate indifference to mental health needs claim is comprised of objective and subjective elements. Objectively, a plaintiff must allege a "sufficiently serious" mental health condition. *Spavone*, 719 F.3d at 138 (citations omitted). To determine whether a condition is "serious," courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Subjectively, a plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Id.* at 703. This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has clarified that a plaintiff must plead and prove that each

Government-official defendant, through the official's own individual actions, has violated the Constitution. *See Tangreti v. Bachman,* 983 F.3d 609, 618 (2d Cir. 2020) (quotation and citation omitted). Further, a plaintiff's conclusory allegations about what a defendant "should know" about are insufficient to allege personal involvement. *Henderson v. Quiros*, No. 3:21-CV-1078 (VAB), 2022 WL 2906755, at *4 (D. Conn. July 22, 2022) (citing cases).

For purposes of this ruling, the Court assumes that Silva has serious mental health conditions. But he still has not alleged any plausible Eighth Amendment claims against Walsh, Kimble-Goodman, or Pieri.

Captain Walsh

For his Eighth Amendment claim against Captain Walsh, Silva provides only conclusory assertions that Captain Walsh "was deliberately indifferent to [his] serious mental health needs" and that "Captain Walsh did not try to help [him] receive his mental health medication or any other mental health treatment that was needed." Am. Compl. at ¶¶ 52-53. No specific factual allegations indicate that Captain Walsh was aware, but acted with conscious disregard, of Silva's serious mental health needs by failing to take any measures to provide him with mental health services. *See Salahuddin*, 467 F.3d at 280 (noting mental state for Eighth Amendment deliberate indifference "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). Accordingly, Silva has not plausibly alleged facts to satisfy the subjective element of the deliberate indifference analysis.[3]

---

[3] To the extent that Silva claims Captain Walsh violated Administrative Directive 10.19, he does not state a plausible Eighth Amendment violation. "[A]llegations that a prison official violated the procedures set forth" in an Administrative Directive or other policy "do not state a claim of a violation of an inmate's constitutional rights." *Olivencia v. Pun*, No. 3:21CV00739(KAD), 2021 WL 3173137, at *4 (D. Conn. July 27, 2021).

<u>Kimble-Goodman</u>

With respect to his claims against APRN Kimble-Goodman, Silva alleges in conclusory terms that she "was deliberately indifferent to [his] serious needs for his mental health medication as well as [his] need to be re-evaluated" and that she "delayed, and prevented, [him] from receiving the help that he (Silva) needed for his condition." Am. Compl. at ¶¶ 58-59.[4] Here, Silva has not alleged any specific facts to explain how Kimble-Goodman delayed or prevented him from receiving mental health medication or re-evaluation. Silva's attached exhibits indicate that Kimble-Goodman planned to provide him with evaluation and consideration for being placed back on his mental health medication. Exhibits at 32, ECF No. 16-2. No factual allegations suggest that Kimble-Goodman acted with any consciousness that her conduct subjected him to serious mental health harm.

Silva's Eighth Amendment claim appears to challenge a medical decision about his need for mental health medication, but an inmate's mere disagreement about a medical decision is insufficient to state a claim. *See Gonzalez v. Sarreck*, 2011 WL 5051341 at *18 (S.D.N.Y. Oct. 24, 2011) ("It is well settled that disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention are insufficient under [section] 1983."). To the extent Silva asserts that he should have received his medication upon his request or received a more immediate mental health evaluation, a prisoner does not have the right to choose his or her medical treatment as long as he receives adequate treatment. *Hill v.*

---

[4] "In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay." *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin*, 467 F.3d at 280). Here, Silva's allegations are vague but the Court will assume that he has satisfied the objective component based on suffering from his mental health symptoms during a period of delay.

11

*Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Here, the amended complaint provides no specific factual allegations reflecting that Silva received inadequate medical treatment. Even if the amended complaint could be construed as stating a claim that Kimble-Goodman should have recognized Silva's immediate mental health need for medication, such claim would only suggest that she acted negligently, which does not satisfy the standard for Eighth Amendment deliberate indifference. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (noting Eighth Amendment deliberate indifference requires a mental state "more blameworthy than negligence").

Accordingly, Silva has not plausibly alleged an Eighth Amendment deliberate indifference claim against Kimble-Goodman.

Dr. Pieri

Silva's allegations refer to his attached inmate requests to Dr. Pieri for mental health medication, but these exhibits show timely responses from Dr. Pieri, indicating that Silva was being provided with mental health treatment, that Dr. Pieri was not responsible for overseeing Silva's mental health providers, and that Dr. Pieri provided Silva with information about how he could pursue his requests for mental health assistance. Am. Compl. at ¶¶ 24-25; Exhibits at 24-25, ECF No. 16-2. No specific factual allegations raise an inference that Dr. Pieri acted with a conscious disregard to Silva's mental health needs; Silva's conclusory allegations that Dr. Pieri "was deliberately indifferent" to his serious needs for his mental health medication and re-evaluation are not sufficient to support a claim against Dr. Pieri for Eighth Amendment medical indifference. *See Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) ("[a]lthough we afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal

interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled.")) (internal quotation mark omitted). Accordingly, the Court concludes that the Eighth Amendment claim against Dr. Pieri is not plausibly alleged.

### D. Official Capacity Section 1983 Claims

To the extent that Silva sought to seek damages against any individual defendant in their official capacity, such claims are not plausible because the Eleventh Amendment bars monetary damages against Defendants in their official capacities. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that claims for money damages against state employees in their official capacities in federal court are barred by the Eleventh Amendment). Nor could Silva state any plausible claim for declaratory judgment or injunctive relief on the basis of his allegations because he has not raised any plausible section 1983 claims. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) (requests for injunctive relief are remedies and are dismissed with the underlying claim). Moreover, as the DOC website shows that Silva is no longer housed at Cheshire, any official capacity claims against MacDougall employees are moot. See *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility.); *Lapierre v. Lavalley*, No. 9:15CV1499(MAD/DJS), 2016 WL 4442799, at *3 (N.D.N.Y. Aug. 23, 2016) (plaintiff could not seek injunctive relief against correctional staff at prison to which he had been transferred as they were not defendants in the case and could not seek injunctive relief against staff at former facility because transfer mooted request for injunctive relief).

### IV. ORDERS

For the foregoing reasons, Silva's motion to reopen is DENIED [ECF No. 16] because

his proposed amended complaint fails to state any plausible claims for relief under the ADA, RA or 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915A(b). This case will remain closed.

                                              _____/s/_____
                                              Michael P. Shea
                                              United States District Judge

**SO ORDERED** this  13th  day of      January     2023, at Hartford, Connecticut.

14